## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

PAUL CHATMAN,

Plaintiff,

v.

ROB L. JEFFREYS, *Director of the Illinois Department of Corrections*, *et al*.

Defendants.

Case No. 1:22-1314-MMM

## <u>OPINION AND ORDER</u>

Pending before the Court is Plaintiff Paul Chatman's Motion to Proceed *in forma pauperis*. ECF No.  2. Plaintiff brought suit against Defendants Rob L. Jeffreys, the Director of the Illinois Department of Corrections, Brendan E. Kelly as the Director of the Illinois State Police, and Craig Findley, Chairman of the Illinois Prisoner Review Board. For the reasons stated below, Plaintiff's Motion to Proceed *in forma pauperis* is DENIED and his Complaint is DISMISSED.

## BACKGROUND

In the Complaint, Plaintiff asserts that he was convicted of First-Degree Murder in 1983 and that he was 17 years old when he committed the offense. ECF No. 1 at 3. Plaintiff states that he was released from state custody on June 24, 2020.

While he was incarcerated, a law that Plaintiff refers to as the "Murder and Violent Offender Against Youth Registration Act" was passed. *Id*. (citing 730 ILCS 154/1). Plaintiff asserts that despite him being 17-years old at the time of the offense, and the victim being an adult, he is now required to register with the Illinois State Police and provide photographs, his address, and employment information for the purposes of registering. *Id*. at 4.  He argues that he will be

closely monitored during his 10-year registration period and may be arrested if he happens to inadvertently fall short of the reporting requirements. *Id*.

Plaintiff already brought suit against the State of Illinois on largely the same issues presented here. Plaintiff named only the State of Illinois but served the notice of lawsuit on the same three Defendants named here. He brought the case in the Circuit Court of Cook County for a temporary restraining order exempting him from registering under the Registration Act. *Chatman v. People*, 2022 WL 6126027 (Ill. App. Ct. 2022). The lower court held an oral argument where the state officials were given the opportunity to present their arguments on the motion to dismiss. *Id*. at 2. The lower court dismissed the case on the basis of sovereign immunity finding that Plaintiff technically only named the State of Illinois in the Complaint, despite serving the lawsuit on the three Defendants named here. *Id*. The lower court also otherwise observed that the Registration Act was not an unconstitutional *ex post facto* law. *Id.* The lower court denied Plaintiff the opportunity to replead because Plaintiff would be unable to plead facts that would entitle him to relief. *Id*. The Illinois Court of Appeals found that it was appropriate to reach the merits because Plaintiff could have just amended to name the state officials. *Id*. at 4. The Appellate Court therefore addressed the merits of Plaintiff's claims. *Id*. The Court found that the law did not violate the *ex post facto* clause of the Constitution and did not violate the single subject Rule of the Illinois Constitution. The Illinois Supreme Court denied his petition for appeal. *Chatman v. People*, 193 N.E.3d 8 (Ill. 2022).

Plaintiff has now brought suit in federal court arguing that the registration law violates the *ex post facto* clause of the Constitution, the Eighth Amendment, the due process rights of the Fifth and Fourteenth Amendment, and the single subject rule found in the Illinois Constitution. Plaintiff

does not seek any money damages but instead seeks an injunction to stop Defendants from enforcing the registration requirements.

## LEGAL STANDARD

Federal courts may authorize a litigant to proceed in an action without prepaying fees if two conditions are met: (1) the litigant is unable to pay the costs of commencing the action; and (2) the action is not frivolous nor malicious, does not fail to state a claim on which relief may be granted, and does not seek monetary relief against a defendant that is immune from such relief. 28 U.S.C. §§ 1915(a) and (e)(2). Regardless of plaintiffs' ability to pay, they must assert a claim upon which relief may be granted.

To state a claim upon which relief can be granted, the complaint need contain only enough factual matter, accepted as true, to allow the reasonable inference that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff's claim must "give enough details about the subject matter of the case to present a story that holds together," to be plausible. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). A court must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993).

## DISCUSSION

Plaintiff's claims center on the Murder Registration Act, effective January 1, 2012, which sets forth registration requirements for individuals convicted of first-degree murder of an adult, as follows:

> A person who is convicted or adjudicated delinquent of first degree
> murder of an adult shall be required to register for a period of ten

3

> years after conviction or adjudication if not confined to a penal
> institution, hospital, or any other institution or facility, and if
> confined, for a period of ten years after parole, discharge, or release
> from any such facility.

730 ILCS 154/5(c-6). For the purposes of 154/5, first degree murder of an adult "means first degree

murder under Section 9-1 of the Criminal Code of 1961 or the Criminal Code of 2012 when the

victim was a person 18 years of age or older at the time of the commission of the offense." 730

ILCS 154/5(b-5) .

In his complaint, Plaintiff states that he was convicted of first-degree murder of an

individual who was an adult. Plaintiff argues that he should be exempt from the act based upon

paperwork that he received when he was released, and he alleges the language of the statute

otherwise does not apply to him. He further argues that as applied to him, the law violates the *ex

post facto* clause of the Constitution, the Eighth Amendment, and his Due Process Rights under

the Constitution. The Supreme Court and Seventh Circuit have repeatedly denied similar

challenges to similar registration laws. Accordingly, as explained below, it is clear that Plaintiff

has not stated a basis for relief.

**1.  The registration requirements do not violate the *ex post facto* clause of the Constitution.**

Plaintiff argues that since the law requiring registration was passed over twenty years after

he committed his crime, the law violates the *ex post facto* clause of the Constitution. The *ex post

facto* clause prohibits the enactment of a "law that changes the punishment, and inflicts a greater

punishment, than the law annexed to the crime, when committed." *U.S. v. Lopez*, 222 F.3d 428,

440 (7th Cir. 2000) (quoting *Calder v. Bull,* 3 U.S. 386, 390 (1798)); *see also* U.S. CONST. art. I,

§ 9, cl. 3. "For a law to violate this protection, it must be retroactive and punitive." *Koch v.

Hartland*, 43 F.4th 747, 750 (7th Cir. 2022). A civil sanction implicates the *ex post facto* clause of

the Constitution "only if it can be fairly characterized as punishment." *Bae v. Shalala*, 44 F.3d 489, 492 (7th Cir. 1995). A civil regulatory scheme that is not punitive in nature does not raise *ex post facto* concerns. *See Vasquez v. Foxx*, 895 F.3d 515, 520 (7th Cir. 2018) (*abrogated on other grounds in Koch v. Hartland*, 42 F.4th 747 (7th Cir. 2022)). A significant factor in determining whether a statute is punitive is the legislation's purpose. *Gilbert v. Peters*, 55 F.3d 237, 238 (7th Cir. 1995) (citing *Trop v. Dulles*, 356 U.S. 86, 96 (1958)). If the purpose was to impose punishment "that ends the inquiry." *United State v. Hook*, 471 F.3d 766 (7th Cir. 2001)(quoting *Smith v. Doe*, 538 U.S. 84, 92 (2003)). If the purpose is "civil and nonpunitive" the court must examine whether the "statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Id*. (alteration in original) (quoting *Smith*, 538 U.S. at 92).

Both the Seventh Circuit and Supreme Court have upheld various laws requiring that certain types of offenders register despite challenges under the *ex post facto* clause of the Constitution. The Seventh Circuit and Supreme Court have determined that registering on a list is a "nonpunitive civil regulation" that did not raise any *ex post facto* concerns. *Vasquez*, 895 F.3d at 520 (citing *Smith*, 538 U.S. at 105–106; *see also United States v. Leach*, 639 F.3d 769, 773 (7th Cir. 2011)). [1] The Supreme Court explained that "our criminal law tradition insists on public indictment, public trial, and public imposition of a sentence" and that the criminal system "does not treat dissemination of truthful information in furtherance of a legitimate governmental

---

[1] *Vasquez* and *Leach* were overruled in part my *Koch v. Hartland*, 42 F.4th 747 (7th Cir. 2022). *Vasquez* and *Leach* both stated that creating new prospective legal obligations based on the person's prior criminal history meant that the law was not retroactive. The Seventh Circuit recently held that the "*Leach-Vasquez* rule for analyzing retro-activity can no longer stand." *Koch v. Hartland*, 43 F.4th 747, 755 (7th Cir. 2022). The Seventh Circuit stated that *Leach* and *Vasquez* failed to account for the fact that the "sex offender registration laws imposed obligations beyond those prescribed at the time of the offense." *Id*. However, the Seventh Circuit reiterated that this was only part of the two-part inquiry into whether a law was both punitive and retroactive. *Id*. The Seventh Circuit did not disturb *Vasquez* and *Leach*'s holdings and analysis regarding whether a law qualified as punitive.

objective as punishment." *Smith*, 538 U.S. at 99. The Supreme Court further reasoned that registering does not impose "physical restraints" and is "less harsh than the sanctions of occupational debarment, which we have held to be nonpunitive." *Id*. Finally, the Court reasoned that landlords and employers could conduct background checks on the criminal records of prospective tenants or employees, undermining an argument that the registry will make registrants unemployable or less able to access housing. *Id*. The Supreme Court summarized that any negative consequences "flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record." *Id*. at 101. While the Supreme Court was evaluating the constitutionality of Alaska's sex offender registry, the same reasoning applies to Illinois violent offender registry. Accordingly, the Court finds that the law does not violate the *ex post facto* clause of the Constitution because registering is not punishment.

**2. The registration requirements do not violate the Eighth Amendment.**

Plaintiff's argument that this violates the Eighth Amendment because he finds it is defamatory and embarrassing also fails. "The Eighth Amendment prohibits punishments which involve the unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penological justification." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). As explained above, the Seventh Circuit and Supreme Court have determined that these types of registries are not punishments at all and therefore, it could not be a cruel or unusual punishment. The Supreme Court has also addressed the issue of whether a sex offender registry could qualify as a violation of the Eighth Amendment. The Supreme Court stated that the "purpose and the principal effect" are to "inform the public for its own safety, not to humiliate the offender." *Smith*, 538 at 99. That the information is subject to

more widespread access on the internet does "not render Internet notification punitive." *Id*. Accordingly, the Supreme Court has confirmed that the registries are not punitive.

Accordingly, even if this could be fairly characterized as punishment, it is not "grossly disproportionate" to the crime or involve "wanton infliction of pain." *See United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006) (concluding that since DNA blood draws are routine and incurs minimal pain and discomfort, they do not violate the Eighth Amendment). Accordingly, the Act does not violate the Eighth Amendment.

### 3. The Registration Act does not violate the due process clause of the Fifth and Fourteenth Amendment.

Plaintiff claims that this scheme violates the Fifth and Fourteenth Amendments because he "was denied due process where, upon his release, he was not admonished by the Judge of such registry before he was placed under its ramifications." ECF No. 1 at 9. Plaintiff appears to suggest that he should have appeared before a judge before being included on the registry. In *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003), the Supreme Court overturned the Second Circuit's ruling that due process entitled class members to a hearing to determine whether they were likely to be dangerous "before being labeled as such by their inclusion on the registry." *Id*. at 6. The Supreme Court explained that a "mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest." *Id*. The Court explained that "the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." *Id*. at 7. Here, as well, Plaintiff has already been found guilty in a court of law and the registry is merely reporting that fact. Accordingly, there is no due process violation.[2]

---

[2]Plaintiff does not appear to be making a substantive due process claim. In *Vasquez*, the Seventh Circuit rejected the parties' substantive due process claim, explaining that the law only triggers rational basis review. The Seventh Circuit upheld the more onerous requirements of the sex offender registry

4. **Federal courts must follow state interpretation of state laws.**

Plaintiff argues that the Registration Act violates Illinois's single subject rule because the "title of the Act is confined to the subject of youth and children" and the "entire Act relates to violence against youth, children and persons under the age of 18." ECF No. 1 at 12 (citing 730 ILCS 154/1). The Illinois Constitution states that "Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." Ill. Const. 1970, art. IV, §8(d). The Illinois Supreme Court has explained that the clause "operates to prevent the passage of legislation that, standing alone, may not muster the votes necessary for enactment." *People v. Cervantes*, 723 N.E.2d 265, 266 (Ill. 1999) (citing *People v. Reedy*, 708 N.E. 2d 1114 (1999); *Johnson v. Edgar*, 680 N.E. 2d 1372 (1997)). An act "violates the single subject rule when the General Assembly 'includes within one bill unrelated provisions that by no fair interpretation have any legitimate relation to one another.'" *Id*. (quoting *Reedy*, 708 N.E. 2d at 1117). However, "an enactment satisfies the single subject requirement so long as the matters included within it have a natural and logical connection." *Arangold Corp. v. Zehnder*, 352, 718 N.E.2d 191 (1999).

Plaintiff attempts to frame this issue as a violation of the Federal Constitution but does not fully explain that argument. Instead, it appears that Plaintiff is trying to enforce a provision that exists only in the state constitution, and there are many obstacles to bringing such a claim in federal courts due to the immunity afforded the state under the Eleventh Amendment, among other jurisdictional issues. *See e.g. McDonough Assocs. v. Grunloh*, 722 F.3d 1043, 1050 (7th Cir. 2013) (explaining that the *Ex parte Young* exception to the Eleventh Amendment bar on suing states in

---

banning registrants from living too close to day cares. *Vasquez*, 895 F.3d at 525 (7th Cir. 2018) (*abrogated on other grounds in Koch v. Hartland*, 42 F.4th 747 (7th Cir. 2022)). The same reasoning would apply here that there is a rational basis in that there is a legitimate government interest in protecting the public from violent offenders and the Court would not second-guess policy judgment by attempting to weigh the likelihood of recidivism against the harm to the registrant. *Id*.

federal court allows lower federal courts to enforce *federal* law against the state officials in certain circumstances); *Grable & Sons Metal Prod. Inc. v. Darue Engr. & Mfg.*, 545 U.S. 308 (2005) (establishing that in deciding whether a federal forum is appropriate to resolve a state law claim that implicates a federal issue "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"). Moreover, federal courts must defer to state court interpretation of their own laws. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) ("state court precedent is binding upon [federal courts] regarding issues of state law"). Here, the Illinois Appellate Court has already explained that the Registration Act requires offenders to register if they are convicted of certain offenses against youth or adults and that those matter "have a natural and logical connection." *Chatman v. People*, 2022 WL 6126027 (Ill. App. Ct. 2022). Accordingly, the court found requiring registration for adult offenders accused of first-degree murder in an act that also relates to violence against children did not violate the single subject rule. *Id*. Thus, this Court cannot disturb that decision, and Plaintiff's argument on this issue fails.

## CONCLUSION

Both the Supreme Court and the Seventh Circuit have upheld various criminal registries, and Plaintiff repeats arguments that have been rejected many times. Accordingly, that Plaintiff did not adequately plead a claim for relief, and it is not appropriate to allow him to proceed *in forma pauperis.* Accordingly, Plaintiff's Motion to Proceed *in forma pauperis* [2] and his Motion for Service of Summons [3] are DENIED. Plaintiff's Complaint is DISMISSED without prejudice.

ENTERED this 14th day of February, 2023.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
